IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILLIAM F. SAPONARO, JR., <br><br> Plaintiff, <br><br> v. <br><br> GRINDR, LLC, <br><br> Defendant. | HONORABLE JEROME B. SIMANDLE <br><br> Civil No. 14-04522 (JBS/AMD) <br><br> **OPINION** |

APPEARANCES:

J. Michael Farrell, Esq.
5 North Clinton Street
Wenonah, NJ 08090
    Attorney for the Plaintiff

Frederick Benno Polak, Esq.
POST, POLAK, GOODSELL, MACNEILL, & STRAUCHLER, P.A.
425 Eagle Rock Avenue, Suite 200
Roseland, NJ 07068
    Attorney for the Defendant

**SIMANDLE, Chief Judge:**

**I.  INTRODUCTION**

After Plaintiff William F. Saponaro, Jr. was arrested for engaging in a sexual encounter with a minor who used Defendant Grindr, LLC's online social networking service to arrange the encounter, he sued Defendant for negligence for allowing a minor child to access and utilize its social networking site. This matter comes before the Court upon Defendant's motion to dismiss

[Docket Item 5] under Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief can be granted.

Because Plaintiff's claim is barred by the Communications Decency Act, 47 U.S.C. § 230, the Court will grant Defendant's motion and will dismiss this action.

## II.  BACKGROUND

The facts of this case are drawn from the Complaint and are accepted as true for purposes of this motion.[1]

Plaintiff is an adult male who owns a construction and restoration company in the Cape May community. (Compl. ¶¶ 1, 14.) Defendant is a Limited Liability Company, organized in the State of California, which owns and operates two all-male online geo-social networking applications "Grindr" and "GrindrX." (Id. at ¶¶ 2-4.)

---

[1] Although, as a general rule, a party's reliance upon factual materials extraneous to the pleadings would require the Court to treat a motion to dismiss as one for summary judgment under Rule 56, see Crown Cent. Petroleum Corp. v. Waldman, 634 F.2d 127, 129 (3d Cir. 1980), the Court may consider a "document integral to or explicitly relied upon in the complaint," or an "undisputedly authentic document" without converting the motion. In re Rockefeller Ctr. Props., Inc. Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) and Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). In this case, the Complaint explicitly relies upon Defendant's age restriction, found in its terms of service. As the parties do not dispute the language of Defendant's terms of service, the Court will consider the Terms of Service (Ex. C to Def. Mot. to Dismiss [Docket Item 5-5]) for purposes of this motion.

Plaintiff claims that on June 21, 2012, a 13 year old minor (the "minor") used Defendant's GrindrX service to solicit a sexual encounter with Mark LeMunyon ("LeMunyon"), a 24 year old man who subscribes to Defendant's online services. (Id. at ¶¶ 4, 5.) Upon receiving the minor's solicitation, LeMunyon contacted Plaintiff and arranged a sexual encounter between himself, the minor, and Plaintiff.[2] (Id. at ¶¶ 6, 7.) The arranged "three party sexual liason" came to fruition at Plaintiff's home in Cape May some time during the following week. (Id. at ¶¶ 6, 7.) On June 28, 2012, Plaintiff was arrested in Cape May County, New Jersey and charged with sexual assault and endangering the welfare of a child in connection with the aforementioned sexual encounter. (Id. at ¶ 8.) He currently faces charges in excess of 20 years in prison. (Id.)

On June 20, 2014, Plaintiff filed the instant action against Defendant in the Superior Court of New Jersey, Law Division, Cape May County. [Docket Item 1.] In Count One, Plaintiff claims that Defendant was negligent by allowing the minor to hold himself out as an adult of consenting age on its online service. (Id. at ¶ 11.) Specifically, Plaintiff asserts

---

[2] It appears that LeMunyon and Plaintiff had some form of pre-existing relationship prior to the operative events of this case; however, the nature and extent of that relationship is neither detailed in the Complaint nor relevant for determining the merits of Defendant's motion.

3

that he reasonably relied upon Defendant's age-restriction (a minimum of 18 years of age, 21 years in places where 21 years is the age of majority) found in the Grindr Terms of Service, and that Defendant's negligent failure to enforce its age-restriction directly resulted in Plaintiff's arrest and corresponding financial expenditures. (Id. at ¶¶ 4, 11, 14-17; Pl.'s Br. Ex. D. at 1.) Count Two of Plaintiff's Complaint asserts a cause of action against Defendant for negligent infliction of emotional distress. (Compl. ¶¶ 18-25.)

Defendant removed the action to this Court and filed a motion to dismiss [Docket Items 1, 5.] Defendant argues that it is immune from liability in its capacity as an "interactive computer service" provider under the Communications Decency Act, 47 U.S.C. § 230 ("CDA"). (Def.'s Br. 1.) Defendant further argues that it did not owe any duty to Plaintiff under traditional negligence principles and did not proximately cause Plaintiff's damages. (Id. at 1, 2.)

For the reasons set forth below, the Court holds that Plaintiff's claim is barred by the Communications Decency Act. Furthermore, the Court finds that Plaintiff's claims of negligence and negligent infliction of emotional distress fail as a matter of law. Plaintiff's complaint will be dismissed with prejudice.

**III. STANDARD OF REVIEW**

Under Fed. R. Civ. P. 12(b)(6), the Court must "accept all factual allegations as true, construe the Complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the Complaint, the plaintiff may be entitled to relief." Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012). The complaint must allege sufficient factual matter, which, when accepted as true, "state[s] a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

A motion to dismiss may be granted only if a court concludes that the plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests that make such a claim plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). Although Rule 8 does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).

**IV. DISCUSSION**

The salient issues in this case are whether Defendant is immune from liability under the Communications Decency Act, 47 U.S.C. § 230 (the "CDA"), and whether Plaintiff has otherwise

pled sufficient facts to state claims for negligence and negligent infliction of emotional distress.

### A. Plaintiff's claims are barred by the Communications Decency Act.

The CDA's "Good Samaritan" clause provides, in pertinent part, "No provider or user of an interactive computer service shall be treated as the *publisher* or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1) (emphasis added). Section 230 also provides that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." Id. § 230(e)(3).

As a practical matter, this statutory language "'precludes courts from entertaining claims that would place a computer service provider in a publisher's role' and bars 'lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions such as deciding whether to publish, withdraw, postpone, or alter content.'" Green v. America Online, 318 F.3d 465, 471 (3d Cir. 2003) (quoting Zeran v. America Online, Inc., 129 F.3d 327, 330 (4th Cir. 1997). Accordingly, interactive computer service providers cannot be held liable for publishing harmful information that is generated by a third party. For example, if an online tabloid enables users to anonymously upload comments to its stories, the

6

tabloid would not be liable for defamatory statements within those comments. See Jones v. Dirty World Entertainment Recordings LLC, 755 F.3d 398, 408 (6th Cir. 2014) ("If a website displays content that is created entirely by third parties, then it is only a service provider with respect to that content—and thus is immune from claims predicated on that content.").[3]

The Third Circuit has recognized the CDA's immunity provision to protect internet service providers from allegations of negligently failing to monitor their websites. See Green, 318 F.3d at 471. In Green, the plaintiff sued a chat room's host for defamatory statements generated by another user. Id. at 469, 471. The plaintiff sought to hold the host liable for failing to monitor its chat room. Id. The Court of Appeals barred the claim, stating that monitoring is a function "quintessentially related to a publisher's role[,]" liability for which is specifically proscribed by the CDA. Id. at 471.

In this case, Plaintiff's claims fail for the same reason. Plaintiff does not dispute that Defendant is an interactive computer service provider within the meaning of the CDA because its website gives subscribers access to a common server for

---

[3] This principal is not without its limits. The CDA was not meant to immunize internet service providers for *all* activity on their websites; they are, indeed, still responsible for their own wrongful conduct. See Carafano v. Metrosplash.com Inc., 339 F.3d 1119, 1124 (9th Cir. 2003).

7

purposes of social networking. See § 230(f)(2) (defining an "interactive computer service" as "any information service, system, or access software that provides or enables computer access by multiple users to a computer server. . . ."). Plaintiff also seeks to hold Defendant responsible for failing to monitor its website: in the Complaint, Plaintiff repeatedly characterizes Defendant's wrongdoing as "failing to properly supervise its site." (See Compl. ¶¶ 11-12, 19-20). Plaintiff argues that as a consequence, a thirteen-year-old was allowed to use its services and to hold himself out as an adult, which created the circumstance that ultimately led to Plaintiff's arrest. Plaintiff therefore claims that Defendant should be liable for the harm caused by publishing the minor's assertion that he was over eighteen years of age. Because the Third Circuit has expressly interpreted the CDA to immunize interactive service providers from this type of liability, see Green, 318 F.3d at 471, Plaintiff's claims must be dismissed as a matter of law.

The Fifth Circuit has addressed CDA immunity in a similar factual context. In Doe v. MySpace, Inc., 528 F.3d 413 (5th Cir. 2008), the mother of a 13 year old girl sued a social network provider for allowing her daughter to access its website and meet a 19 year old man, who used the website to arrange a meeting and sexually assault her. Id. at 416-17. The mother

8

alleged that the social network provider, by failing to implement institutional safeguards, violated its duty to protect minors who use its services. Id. at 419. The Fifth Circuit rejected this argument, stating that this categorization was "merely another way of claiming that [the social network provider] was liable for *publishing* the communications" between her daughter and the 19 year old man. Id. at 420 (emphasis added).

Furthermore, despite Plaintiff's arguments to the contrary, the Ninth Circuit's decision in Fair Housing Council of San Fernando Valley v. Roomates.com, 521 F.3d 1157 (9th Cir. 2008), does not affect the Court's holding because Defendant did not actively develop illegal content on its site. In Fair Housing, the Ninth Circuit refused to grant CDA protection to a housing website that specifically asked users to disclose their sex, family status and sexual orientation in violation of the Fair Housing Act. Id. at 1166. The Ninth Circuit held that by eliciting specific unlawful information from users, the website acted as a *developer* of content, rather than merely a *publisher*, and was therefore subject to liability. Id.

Plaintiff attempts to analogize this case to Fair Housing and its progeny by claiming that Defendant was not merely a conduit, but rather an active developer, of the information that is published on its site. To support this argument, Plaintiff

relies on the fact that Defendant's site "contains questions to be answered including a profile, the posting of pictures, and dropdown menus suggesting content." (Pl.'s Br. at 13.)

The Court does not find the comparison to Fair Housing persuasive. Even assuming Plaintiff's factual assertions to be true, as the Court must, the questions that Defendant poses to its subscribers when creating a profile substantively differ from those posed by the defendant in Fair Housing in one significant respect: they do not develop content that facially violates a state or federal statute. Defendant's online questionnaire asks users to enter information about themselves, but these questions are facially benign. Plaintiff does not allege – nor does the Court find – that Defendants' questionnaire solicits from users information that is illegal.

This distinction is readily apparent in Fair Housing. There, the Court specifically noted that "[a] dating website that requires users to enter their sex, race, religion and marital status through drop-down menus . . . does not contribute to any alleged illegality," since "[i]t is perfectly legal to discriminate along those lines in dating, and thus there can be no claim based solely on the content of these questions." Fair Housing, 521 F.3d at 1169 and n.3. Similarly, in this case, Defendant merely "provid[ed] *neutral* tools to carry out what may be unlawful or illicit [conduct]"; under Fair Housing, such

10

conduct does not amount to "development" under section 230 of the CDA. Id.

Nor is the Court persuaded by Plaintiff's argument that Congressional intent warrants a narrow construction of the CDA. (Pl.'s Br. at 9.) The language of the CDA unambiguously prohibits interactive service providers like GrinderX from being "treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). As the Fourth Circuit noted in Zeran, "[b]y its plain language, § 230 creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." Zeran, 129 F.3d 327, 330. Where, as here, the language of the statute is clear, "there is no need to pursue a deeper inquiry into its meaning." Conn. Nat. Bank v. Germain, 503 U.S. 249, 23–54 (1992) (citations omitted); see also Lamie v. United States Tr., 540 U.S. 526, 534 (2004) ("When the statute's language is plain, the sole function of the courts – at least where the disposition required by the test is not absurd – is to enforce it according to its terms."); Alston v. Countrywide Financial Corp., 585 F.3d 753, 762 (3d Cir. 2009) (holding that district court's reliance on purpose of statute after having discerned a contrary plain language meaning was error); Rosenberg v. XM Ventures, 274 F.3d

137, 141 (3d Cir. 2001) ("Where the statutory language is plain and unambiguous, further inquiry is not required.").

The Court also notes that the CDA manifests a Congressional policy supporting broad immunity. Section 230 was enacted to "maintain the robust nature of internet communication and, accordingly, to limit government interference in the medium to a minimum." Obado v. Magedson, 2014 WL 3778261, at *3 (D.N.J. Jul. 31, 2014) (quoting Zeran, 129 F.3d at 330). The statute provides that "[t]he Internet and other interactive computer services offer a forum for a true diversity of political discourse, unique opportunities for cultural development, and myriad avenues for intellectual activity." 47 U.S.C. § 230(a)(3). It additionally states that the "policy of the United States" is to "preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation." Id. § 230(b)(2).

Courts have promulgated Congress's intent by applying CDA immunity according to its own clear terms. See, e.g., Zeran, 129 F.3d at 331. This Court must do the same, and it is not this Court's function or role to substitute its judgment for the policy choices made by Congress in promoting communications on the internet. Holding interactive service providers liable for third-party communications would have chilling implications for free speech on the internet. Specifically, if social network

12

hosts are faced with liability every time third-party communications on their networks result in harm, they are left with two extreme courses of action if they wish to ensure insulation from liability: either over-police their networks, taking down communications that might ultimately be harmless; or, strip users of the ability to post communications altogether. Id.; see also, Dimeo v. Max, 433 F.Supp.2d 523, 528 (E.D. Pa. 2006) (noting that without CDA protection, interactive computer services would either have to employ an army of highly-trained monitors to patrol its services, or shut down internet forums altogether). Such an outcome would contravene the express purpose of the CDA.

Because the Court finds that Plaintiff's claims are barred by the CDA, Defendants' motion to dismiss will be granted.

### B. Plaintiff has failed to state claims for negligence and negligent infliction of emotional distress.

Even if the CDA were not implicated in this case, Plaintiff has sufficiently pled a claim for negligence or negligent infliction of emotional distress ("NIED"). To establish a cause of action for negligence in New Jersey, a plaintiff must establish four elements: (1) a duty of care owed by the defendant to the plaintiff, (2) a breach of that duty by the defendant, (3) actual and proximate causation, and (4) damages. Jersey Cent. Power & Light Co. v. Melcar Utility Co., 59 A.3d

13

561, 571 (N.J. 2013). To establish a cause of action for NIED, the defendant's negligence must have caused severe emotional distress. See Gendek v. Poblete, 654 A.2d 970, 972 (N.J. 1995).

Plaintiff's claims for negligence and negligent infliction of emotional distress must fail because the Defendant did not owe him a duty of care. To determine whether a defendant owes a duty to the plaintiff, a "significant consideration" is whether the plaintiff is a foreseeable victim of the defendant's conduct. Carvalho v. Toll Bros. and Developers, 675 A.2d 209, 212 (N.J. 1996). "Once the foreseeability of an injured party is established, . . . considerations of fairness and policy govern whether the imposition of a duty is warranted." Carter Lincoln-Mercury, Inc. v. EMAR Group, Inc., 638 A.2d 1288, 1288 (N.J. 1994). This assessment of fairness and policy "involves identifying, weighing, and balancing several factors—the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution." Hopkins v. Fox & Lazo Realtors, 625 A.2d 1110, 1116 (N.J. 1993) (citing Goldberg v. Housing Auth., 186 A.2d 291 (1962)).

In this case, Plaintiff cannot establish a duty because he was not a foreseeable victim of Defendant's alleged negligence. The communications that occurred on Defendant's website that ultimately led to the illegal sexual encounter were exclusively

14

between LeMunyon and the minor, both of whom were registered subscribers to the website. (See Compl. ¶¶ 5, 6.) Plaintiff does not allege to be a subscriber to the website, nor does he allege to have participated in the communications with the minor on Defendant's site. Indeed, there is no allegation that Plaintiff ever used Defendant's site at all. He was not a foreseeable plaintiff in this case, and therefore Defendant did not owe a duty of care towards him. Plaintiff asserts that "the defendants [sic] must clearly have foreseen the potential for use by minors." (Pl.'s Opp. Br. at 14.) This argument, although perhaps relevant to the question of whether harm to an underage user of Grindr was foreseeable, does not show that there was a foreseeable risk that a non-Grindr user would be injured by the online actions of a minor.[4]

---

[4] Furthermore, the Hopkins fairness factors weigh against imposing a duty on Defendant to monitor its website. With regards to the relationship between the parties, the Complaint does not allege the existence of any direct relationship between Plaintiff and Defendant; rather, Plaintiff alleges that he was a third-party who utilized Defendant's services merely via LeMunyon, who acted as an intermediary. (See Compl. ¶¶ 5, 6.) Further, concerning the ability to exercise care, the Third Circuit has previously held, in a similar context, that publishers of online content do not have the ability to exercise care over user-generated content. See generally, Am. Civil Liberties Union v. Mukasey, 534 F.3d 181 (3d Cir. 2008). Finally, with regards to the public interest, this Opinion has already touched upon the express public policy that supports CDA immunity. This same policy, namely the promotion of free speech on the internet, weighs against imposing a common-law duty on Defendant to monitor its website for the protection of non-users. This Court does not address, in this instance, whether an

Given this disposition, there is no need to address Defendant's alternative ground that Plaintiff was the intervening cause of his own harm, since it was Plaintiff who met and had contact with this 13 year-old boy, not Defendant. Much common sense supports this argument, but it may not be resolvable on a motion to dismiss in which Plaintiff's allegation, that he was unaware of the boy's age, must be accepted as true.

Thus, in addition to being barred by the CDA, Plaintiff's negligence and NIED claims also fail as a matter of law.

**V. CONCLUSION**

Because Plaintiff's claims are barred by the Communications Decency Act and because Plaintiff's Complaint fails to state a claim for negligence and negligent infliction of emotional distress, the Court will grant Defendant's motion to dismiss pursuant to Rule 12(b)(6). An accompanying Order will be entered.

| | |
|---|---|
| **March 13, 2015** | **s/ Jerome B. Simandle** |
| Date | JEROME B. SIMANDLE |
| | Chief U.S. District Judge |

---

online dating service such as this defendant has a duty to protect minors who seek to register by rejecting such registration.

16